THE PRESIDENT, DIRECTORS AND COMPANY of the FARMERS' BANK of the STATE OF DELAWARE, complainants below, appellants, *vs.* VINCENT GILPIN, JOHN F. GILPIN, THOMAS BRADUN, WASHINGTON RICE, and others, defendants below, respondents.

The indorser of a note under protest is not entitled, even in equity, to be considered a *creditor* of the drawer, and to come in for a share of his effects under a general assignment for the benefit of creditors.
A bill may be dismissed generally, and with costs, after a decree overruling a demurrer to it.
A bill may be dismissed generally as to all the defendants, and with costs, after a *pro confesso* decree as to some of the defendants.

APPEAL from Chancery.   Newcastle county.
Coram—*Clayton,* Chief Justice.   *Robinson* and *Harrington.*
The case was this:—The Farmers' Bank, in the year 1820 discounted two promissory notes, one for $2000 and the other for $1000: drawn and signed by Joseph Robinson in favor of Thomas Bradun and by him endorsed to complainants.   These notes were renewed from time to time until February 1821, when Bradun, being about to leave the State, addressed a letter to the cashier of the bank agreeing to stand as endorser on all subsequent renewals of said notes as fully as if he were present and actually endorsed them.   In this manner they were renewed until the 15th of August 1821, when they were both included in one note for $3000:—and this was continued by subsequent renewals until the 28th of August 1822, on which day a note was drawn by the said Joseph Robinson for $3000, in favor of the said Thomas Bradun at 60 days, and discounted by

the bank on his indorsement made under his agreement of February 1821. This note fell due on the 30th of October, was protested for non-payment, and the indorser regularly notified. Joseph Robinson on the 30th of August 1822, made an assignment to the defendants, Vincent and John F. Gilpin, of all his real and personal estate, in trust to pay a certain preferred debt and to divide the balance among all his other creditors who should within sixty days execute a release. Thomas Bradun, being thus responsible for Robinson on his said endorsement, did, by his attorney in fact Washington Rice, execute the release within the sixty days, by which the complainants insist, he became entitled to a dividend or share of the surplus of Robinson's estate in the hands of his trustees upon the amount of his said liability to the bank. The other defendants were the general creditors of Robinson, and who had signed his release. The bank sued Bradun on his endorsement and recovered judgment on the 4th November, 1825, for $3543 57. On this judgment the land of Bradun was sold but yielded nothing applicable to it; and the defendants, Vincent and John F. Gilpin were summoned as garnishees of Bradun, who appeared, and pleaded nulla bona; but the plaintiffs in the attachment afterwards suffered a nonsuit; and filed their bill insisting that Bradun was entitled by his said indorsement and release to come in as a creditor for a dividend of Robinson's estate in the hands of his assignees; and that complainants were entitled in equity to stand in his place. The bank also obtained judgment on the note against Robinson the drawer; and issued execution, under which they levied from his subsequently acquired property, the sum of $1530. The bill prayed a discovery and account of the trust estate and payment out of it pari passu with the other creditors of Robinson who had released.

The defendants demurred to the bill generally, and in November, 1831, the chancellor, *(Johns, Sen.)* made a decree overruling the demurrer and directing an answer.

Vincent and John F. Gilpin, two of the defendants, answered, denying that Bradun was ever a creditor of Robinson otherwise than as endorser or guarantor aforesaid, or that the release by Rice as his attorney, gave him any right to a dividend of Robinson's estate. The answer also stated, that Bradun had never paid the said note or any part thereof. Washington Rice filed a separate answer; and the other defendants, the creditors of Robinson, not having answered, the bill was taken *pro confesso* as to them. The case came on for hearing in the summer term, 1833, and the chancellor *(Johns, Jr.)* made a general decree dismissing the complainants' bill with costs.

From this decree the present appeal was taken. On the part of the appellants it was contended: First. That Thomas Bradun would in a court of equity be regarded as a creditor of Joseph Robinson and entitled under his release to a share with the other creditors under the assignment. It was admitted that an indorser was not a creditor within the meaning of the English bankrupt laws, or under our attachment laws; but the bankrupt decisions are upon positive law and do not proceed on equitable principles. A court of equity on its own principles will regard all as creditors who have any right or claim either legal or equitable, fixed or contingent, on the debtor's

estate.   If Bradun is entitled as a creditor of Robinson to a share of his estate, the bank is entitled in equity to all the rights and remedies of Bradun and to stand in his place.   Second: That the interlocutory decree overruling the demurrer settled this question, and it was not competent for chancellor Johns, Jr. after demurrer overruled to dismiss the bill and thus virtually reverse the decision of his predecessor without a rehearing.   The demurrer brought up the question of equity in complainants' bill, which necessarily involved the question whether Bradun was a creditor of Robinson and the decree overruling the demurrer, decided this question.   5 *Simmons' Reports* 156, *Nichols* vs. *Rowe.*   A judge is bound to notice a prior order in the same cause, and having decided that a party has an equity he cannot afterwards change that decision without rehearing the case.   Third: That Vincent and J. F. Gilpin being but naked trustees, and the bill having been taken pro confesso as to the cestuis que trust or creditors generally, it was not competent for them to controvert the claim.   That a bill could not be dismissed generally after a pro confesso decree as to any of the defendants; and that as to costs, they could not be given on the dismissal of a bill after a demurrer overruled as to all the defendants and a pro confesso decree against all the parties in interest.

On behalf of the respondents it was insisted: that the principles which test the character of a creditor are the same in equity as at law.   At the time of the assignment and release Bradun was merely the indorser of Robinson on a note then under protest, but had suffered no loss, nor incurred any liability except a contingent one. Nor has he yet placed himself in the condition of a creditor.   He has paid nothing for Robinson and Robinson owes him nothing.   2 *Wash. Cir. Ct. Rep.* 488; *Taylor* vs. *Gardner, garnishee of Lee, Serg. Att.* 103, *same case.*   6 *Johns. Ch. Rep.* 285; 9 *Johns. Rep.* 127; 3 *Wils.* 263, *(271;) Goddard* vs. *Vander Huyden.*   Second: That complainants had adequate remedy at law under the attachment process.   Third: A complainant in equity must show that he has done equity, or is willing to do it.   Is the bank doing equity to the other creditors of Robinson.   Refusing to come in under the assignment and release, they proceed at law against Robinson and have already realized $1530 00; whilst they thrust Bradun forward as a releasing creditor and insist upon coming in under him for a division on their whole debt?   14 *Vezey* 493; 8 *Vezey* 84; 16 *Vezey* 372; *McKensie* vs. *McKensie.*   Fourth: The decision on the demurrer did not preclude the chancellor from decreeing a general dismissal of the bill.   A demurrer in chancery is very different from a demurrer at law.   It does not admit the facts.   It only raises the question whether the facts as stated entitle complainant to an answer.   The overruling a demurrer then decides nothing but that the defendant shall answer.   He may afterwards in his answer insist upon the same matter which he set up by demurrer.   Fifth: A pro confesso decree does not conclude any of the rights of the parties on the merits; but merely confesses the facts in the bill leaving every thing arising upon those facts, as well as to liability as to costs, subject to the final decree of the chancellor.   Costs in equity do not

in any case depend on the result of the case but rest in the equitable discretion of the chancellor.

*Chief Justice Clayton* delivered the opinion of the Court.

*Clayton, Chief Justice:*

On the 28th of August, 1822, Joseph Robinson made his promissory note, payable at sixty days, to Thomas Bradun, for the sum of $3000, which was by him endorsed and delivered to the Farmers' Bank of the State of Delaware, and not being duly paid, it was protested. Joseph Robinson made and executed his deed bearing date the 30th of August, 1822, and did thereby convey, assign and transfer to Vincent Gilpin and John F. Gilpin, their heirs and assigns, all his real and personal estate in trust to sell and apply the proceeds in the first place to the satisfaction of a certain preferred debt, and after the discharge of the same, to apply all the residue of the proceeds of the said real and personal estate, among all the other creditors of the said Joseph Robinson, who should within sixty days thereafter, execute a release to the said Joseph Robinson of their respective claims and demands in equal proportion, according to the amount of their debts. Thomas Bradun, by his attorney, W. Rice, did execute a release within sixty days. This bill is filed by the Farmers' Bank, to enable it to stand in the place of Thomas Bradun, and to have such benefit under the assignment as he was entitled to. Judgments were recovered against the drawer and endorser of the note, and upon execution process against Robinson, the sum of 1530 dollars was levied upon his property at the suit of the Bank.

The first question that arises in this case is, was Bradun at the time of the release executed a creditor of Robinson? It is admitted that there was no *legal indebtedness;* but that equity would treat him as a creditor. We are to consider the operation of his release at law; for if he released nothing, he was not entitled to any benefit under the assignment. As a mere endorser, not having discharged the note at the time, he had no debt, demand, or interest upon which the release could operate; and if he had released nothing, if the creditors of Robinson derived no advantage from the release, he could not avail himself of any benefit under the assignment. It would be unjust to the other creditors to say that he could. The Farmers' Bank was left at liberty to proceed upon this note as the holder of it; and it did proceed, and collected 1530 dollars. Its hands were not tied by this release; it was left at liberty to use every means in its power to collect its debt; and it used those means. What would be the consequence if the Bank should prevail in this case? It would retain what it has received upon its execution, and standing in the place of Bradun, supposing his release to be operative, it would get such share of the dividends as he would have taken; when by the terms of the assignment the creditors were to take equally in proportion to their debts. Robinson was only indebted at the time in 3000 dollars, and that debt was due to the Bank; but the complainant goes upon the notion that he was legally indebted to the Bank in this sum, and that he was equitably indebted to Bradun in a like sum; whereas in truth he can only owe 3000 dollars. Had Bradun discharged the note the Bank would have been no longer a creditor;

and Brandun then being the creditor might have released.   *(Hard-castle* vs. *Commercial Bank, ante)*

To this bill there was a demurrer, and the demurrer was over-ruled, and the defts. ordered to answer.   The Gilpins, the trustees, put in their answer, and the creditors not answering, the bill as to them was taken *pro confesso.*   On the hearing the chancellor dis-missed the bill as to all parties, and decreed the complainant to pay the cost.   On this ground it is insisted that the decree is erroneous; that the bill should not have been dismissed as to those against whom it was taken pro confesso, or at all events that they should have been decreed to pay costs; because it is said that by overruling the de-murrer the court decides that on the facts appearing on the bill the the plff. has an equity which, if the answer does not displace, there must be a decree accordingly.   5 *Sim.* 168-9.

But a demurrer is nothing more than an allegation by a deft. which, admitting the matters of fact alledged in the bill to be true, shows that as they are therein set forth, they are insufficient for the plff. to proceed upon, or oblige the deft. to answer: it therefore de-mands the judgment of the court whether the deft. shall be compelled to make answer to the plff's bill.   *Mit. Pl.* 97, *et seq.*   It is said by Lord Hardwicke, 2 *Atk.* 297-8, "If a man demurs at law it is a perpetual bar if the judgment should be against him; and therefore it is at his own peril he does it; but if a deft. demurs in equity, and it is overruled, he may insist afterwards upon the same thing in his answer."   But a plea shows some cause why the suit should be dis-missed, delayed or barred.   *Mit. Pl.* 97-8.   It is said in *Chit. Dig.* that though a bill be taken pro confesso, yet the plff. must prove his charge: *2d. vol.* 889; *Deck.* 588.   So a bill taken pro confesso, and plff. appearing to have no equity, bill dismissed.   *Deck.* 667; 2 *Chit. Dig.* 889.

In this case the trustees answered, and upon the hearing, the chan-cellor dismissed the bill with costs.   If the bill was rightfully dis-missed as to them, it manifestly follows that no decree could be had against the creditors claiming under the assignment.   The trustees had all the funds and effects in their hands; and the creditors could only be affected through them.   We apprehend that the overruling of a demurrer means nothing more than that the deft. shall answer, and the trustees having answered in this case, we think that upon the hearing the chancellor did right in dismissing the bill as to all the defts.

Consequently his decree is affirmed.

*J. A. Bayard*, for appellants.
*Wales*, for respondents.